IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dennis A. Kovalsky, | ) |
| Debtor, | ) |
| | ) No. 16 B 12928 |
| _____ | ) |
| | ) Judge Deborah L. Thorne |
| Phillip D. Levey, not individually, but solely as Trustee of the Chapter 7 Bankruptcy Estate of Dennis A. Kovalsky, | ) |
| | ) Adv. No. 18-00062 |
| Plaintiff, | ) |
| v. | ) |
| Linda M. Kovalsky, | ) |
| Defendant. | ) |

### ANSWER TO 1ST AMENDED COMPLAINT TO AVOID AND RECOVER TRANSFER AND IN THE ALTERNATIVE, FOR MONIES DUE

Defendant, Linda M. Kovalsky, ("Linda"), by her undersigned attorneys, Fox, Swibel, Levin & Carroll, LLP, does not consent to final orders being entered by the bankruptcy court, and answers Plaintiff's 1st Amended Complaint to Avoid and Recover Fraudulent Transfer and, in the Alternative, for Monies due, as follows:

1. The above-captioned bankruptcy case (the "Case") was commenced on April 15, 2016, when Dennis A. Kovalsky (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

   **ANSWER: Admitted.**

2. Phillip D. Levey is the duly qualified and acting trustee in the Case.

   **ANSWER: Admitted.**

3. This Court has jurisdiction over this adversary proceeding pursuant to 11 U.S.C. §§ 1334(b) and 157(a).

**ANSWER: Admitted.**

4. Venue of this adversary proceeding is proper in this judicial district pursuant to 28 U.S.C. §1409(a) in that this adversary proceeding is commenced in the same District as the related Chapter 7 case.

**ANSWER: Admitted.**

5. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A)(E)(H) and (O) in that this is an adversary proceeding to determine, avoid or recover fraudulent conveyances and recover monies due.

**ANSWER: Admitted.**

6. Defendant Linda M. Kovalsky (the "Defendant") married Debtor on September 17, 1977.

**ANSWER: Admitted.**

7. On June 5, 2007, Debtor filed an action for divorce entitled Dennis A. Kovalsky v. Linda M. Kovalsky, Case No. 07-734195 DO, in the Circuit Court of Oakland County, Michigan.

**ANSWER: Admitted.**

8. At the time said action was filed, Defendant and Debtor jointly owned and occupied the real estate commonly known as 1444 Fairfax, Birmingham, Michigan (the "property"), as their marital residence.

**ANSWER: Admitted.**

9. On February 13, 2008, a Settlement Agreement (the "Settlement Agreement") was signed by Defendant and Debtor resolving all of the issues in said action including property division. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "A".

**ANSWER: Admitted.**

10. Paragraph 5 of the Settlement Agreement provides that Debtor was awarded the former marital residence located at 1444 Fairfax, Birmingham, Michigan, and Defendant was to immediately convey her interest in the property to Debtor by executing a Quit Claim Deed. Further, Defendant was to vacate said property on or before April 30, 2008.

**ANSWER: Admitted.**

11. On February 21, 2008, a Consent Judgment of Divorce (the "Judgment") was entered in the aforesaid action dissolving the marriage of Defendant and Debtor and granting them a divorce. A true and correct copy of the Judgment is attached hereto as Exhibit "B".

**ANSWER: Admitted.**

12. As set forth in the section of the Judgment entitled "Property Settlement", the Settlement Agreement was specifically adopted, incorporated by reference and merged into the Judgment. Id. at page 7.

**ANSWER: Admitted.**

13. Notwithstanding the Judgment and the Settlement Agreement, Defendant did not convey her interest in the Property to Debtor nor did she vacate the property.

**ANSWER: Linda admits that she did not vacate the Property, but lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 13.**

14. As a result of Debtor's efforts to enforce the Judgment with respect to the Property, Defendant and Debtor signed an agreed Order entitled "Stipulated Order for Sale of Former Marital Home" (the "Stipulated Order") on or about July 20, 2015.

**ANSWER: Linda denies that the Stipulated Order was the "result of Debtor's efforts to enforce the Judgment with respect to the Property," but admits the remaining allegations in paragraph 14.**

15. The Stipulated Order was entered by the Circuit Court for the County of Oakland, Michigan, Family Division, in the aforesaid divorce action on August 10, 2015. A true and correct copy of the Stipulated Order is attached hereto as Exhibit "C".

**ANSWER: Admitted.**

16. Pursuant to the Stipulated Order, Defendant agreed to pay Debtor the sum of $500,000.00 for the property and waive any claim to a $1,000,000.00 life insurance policy; Debtor's Delta Miles; payment of past, present and/or future alimony/spousal support; and payment of any and all medical expenses, including, but not limited to premiums, co-pays, etc.

**ANSWER: Admitted.**

17. Defendant thereafter failed to pay Debtor $450,000.00 of said $500,000.00.

**ANSWER: Linda admits that she did not directly pay Debtor $450,000 of the $500,000 referenced in the Stipulated Order, but denies the Trustee's characterization that this was a "fail[ure]" of her obligations under the Stipulated Order.**

18. Nonetheless, Debtor transferred his interest in the Property to Defendant (the "Transfer") by a quit claim deed dated December 1, 2015, which was recorded as Instrument

- 4 -

Number 0235068 by the Clerk of the Oakland County, Michigan, on December 3, 2015. A copy of said deed is attached hereto as Exhibit "D".

> **ANSWER: Linda denies any inference by the Trustee's use of the word "nonetheless" that Linda did not honor her obligations under the Stipulated Judgment, and admits the remaining allegations of paragraph 18.**

19. Defendant had actual knowledge that Debtor

> **ANSWER: The allegation in paragraph 19 is an incomplete thought and thus does not warrant an answer. To the extent an answer is required, Linda denies the allegation in paragraph 19.**

19. The current fair market value of the Property is approximately $2,000,000.00 according to online valuations published by Redfin.com.

> **ANSWER: Linda lacks sufficient knowledge to admit or deny what value Redfin.com ascribed to the Property at the time the Trustee filed this action. Answering further, Linda denies that $2,000,000 is currently a fair market value of the Property, or was a fair market value of the Property at the time this action was filed or any time thereafter.**

20. On information and belief, the Property is not subject to any liens according to the online records of the Oakland County Clerk/Register of Deeds for Oakland County, Michigan.

> **ANSWER: Linda lacks sufficient knowledge to admit or deny the allegations in paragraph 20.**

## COUNT I

## AVOIDANCE OF TRANSFER PURSUANT TO 11 U.S.C. §548(a)

21. To the extent necessary to support the allegations in this Count of the Complaint, Plaintiff re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 20 above of this Complaint, inclusive, as if fully set forth herein.

**ANSWER: Linda incorporates by reference her answers to the allegations in paragraph 1 through 20 above.**

22. Debtor's Transfer of Property to Defendant:

   (a) Was made with the actual intent to hinder, delay or defraud entitles which the Debtor was or became, on or after the date that such transfer was made, indebted; or

   (b) The Debtor received less than a reasonably equivalent value in exchange for said transfer; and:

   (1) The Debtor was insolvent on the date that such Transfer was made or became insolvent as a result of said Transfer; or

   (2) The Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

   (3) The Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

**ANSWER: Denied.**

23. The Transfer is avoidable pursuant to 11 U.S.C. §548(a).

**ANSWER: Denied.**

## COUNT II

### RECOVERY OF AVOIDED FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §550

24. To the extent necessary to support the allegations in this Count of the Complaint, Plaintiff re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 20 above of this Complaint, inclusive, as if fully set forth herein.

**ANSWER: Linda incorporates by reference her answers to the allegations in paragraph 1 through 20 above.**

25. Defendant was the initial transferee of the Transfer.

**ANSWER: Admitted.**

26. The Transfer is a voidable fraudulent transfer pursuant to 11 U.S.C. §548(a)(1)(B).

**ANSWER: Denied.**

27. Pursuant to 11 U.S.C. §550 (a), Plaintiff is entitled to recover, for the benefit of the estate, the Property, or if the Court so orders, the value of the Property from Defendant.

**ANSWER: Denied**

## COUNT III

### AVOIDANCE OF TRANSFER PURSUANT TO 11 U.S.C. §§547(b)

28. To the extent necessary to support the allegations in this Count of the Complaint, Plaintiff re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 20 above of this Complaint, inclusive, as if fully set forth herein.

**ANSWER: Linda incorporates by reference her answers to the allegations in paragraph 1 through 20 above.**

29. Plaintiff hereby pleads this Count in the alternative to the avoidance of fraudulent transfer claim set forth above in Count I and the recovery claim set forth above in Count II.

**ANSWER: Admitted.**

30. The Transfer was to or for the benefit of Defendant.

**ANSWER: Admitted.**

31. The Transfer was in large part for or on account of an antecedent debt owed by Debtor to Defendant, before the Transfer was made, for past, present and/or future alimony/spousal support; and payment of Defendant's medical expenses, including, but not limited to premiums, co-pays, etc.

**ANSWER: Denied.**

32. The Transfer was made between ninety days and one year prior to the filing of the Case.

**ANSWER: Admitted.**

33. At all times material hereto, Defendant was an "insider" within the ambit of 11 U.S.C. §101(31).

**ANSWER: Denied.**

34. The Transfer will enable Defendant to receive more than Defendant would have received in the Case under Chapter 7 of the Code if the Transfer had not been made.

**ANSWER: Denied.**

35. The Transfer is avoidable pursuit to 11 U.S.C. §547(b).

**ANSWER: Denied.**

## COUNT IV

### REOVERY OF AVOIDED PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. §550

36. To the extent necessary to support the allegations in this Count of the Complaint, Plaintiff re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 20 above of this Complaint, inclusive, as if fully set forth herein.

**ANSWER: Linda incorporates by reference her answers to the allegations in paragraph 1 through 20 above.**

37. Defendant was the initial transferee of the Transfer.

**ANSWER: Admitted.**

38. The Transfer is avoidable preferential transfer pursuant to 11 U.S.C. §547(b).

**ANSWER: Denied.**

39. Pursuant to 11 U.S.C. §550(a), Plaintiff is entitled to recover, for the benefit of the estate, the Property, or if the Court so orders, the value of the Property from Defendant.

**ANSWER: Denied.**

## COUNT V

### FOR MONIES DUE IN THE ALTERNATIVE TO AVOIDANCE AND RECOVERY OF TRANSFER PURSUANT TO 11 U.S.C. §§548(a), 547(b) AND 550

40. To the extent necessary to support the allegations in this Count of the Complaint, Plaintiff re-alleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 20 above of this Complaint, inclusive, as if fully set forth herein.

**ANSWER: Linda incorporates by reference her answers to the allegations in paragraph 1 through 20 above.**

41. Plaintiff hereby pleads this Count in the alternative to the avoidance of fraudulent transfer claim set forth above in Count I and the recovery claim set forth above in Count II as

well as the preferential transfer claim set forth in Count III and the recovery claim set forth above in Count IV.

**ANSWER: Admitted.**

42. Debtor's right to the monies due him from Defendant pursuant to the aforesaid Stipulated Order constitutes property of Debtor's bankruptcy estate within the ambit of 11 U.S.C. §541.

> **ANSWER: Linda denies that the Debtor has any right to money due him from Linda, and thus denies the allegations in paragraph 30.**

43. Defendant owes Debtor the sum of $450,000.00 pursuant to the Stipulated Order and said sum should be paid/turned over the Plaintiff pursuant to the Stipulated Order and 11 U.S.C. §542.

> **ANSWER: Denied.**

44. Plaintiff has made demand on Defendant for payment of said $450,000.00 but she has failed to pay any portion thereof to date.

> **ANSWER: Linda admits that Plaintiff has demanded $450,000 from her, and that she has not paid any of that amount to Plaintiff.**

**AMENDED AFFIRMATIVE DEFENSES**

1. Defendant Linda M. Kovalsky ("Linda") married Debtor Dennis Kovalsky ("Dennis") on September 17, 1977.

2. On June 5, 2007, Dennis filed an action for divorce entitled Dennis A. Kovalsky v. Linda M. Kovalsky, Case No. 07-734195 DO, in the Circuit Court of Oakland County, Michigan.

3. At the time said action was filed, Defendant and Debtor jointly owned and occupied as their marital home the real estate commonly known as 1444 Fairfax, Birmingham, Michigan (the "Home").

4. The Home was encumbered by a mortgage (the "Mortgage") held by CitiMortgage, Inc. ("CitiMortgage"), pursuant to a promissory note (the "Note") with CitiMortgage, Inc. that only Dennis signed and was liable for.

5. On February 13, 2008, a Settlement Agreement (the "Settlement Agreement") was signed by Linda and Dennis resolving the division of their property pursuant to their divorce. A true and correct copy of the Settlement Agreement is attached as Exhibit "A" to Plaintiff's amended complaint.

6. Paragraph 5 of the Settlement Agreement provides that Dennis was awarded the Home and Linda was to convey her interest in the property to Dennis by executing a Quit Claim Deed. Further, Linda was to vacate said property on or before April 30, 2008.

7. On February 21, 2008, a Consent Judgment of Divorce (the "Judgment") was entered in the aforesaid action dissolving the marriage between Dennis and Linda and granting them a divorce. A true and correct copy of the Judgment is attached as Exhibit "B" to Plaintiff's amended complaint.

8. Linda signed a quit claim deed to Dennis regarding the Home and left it with her attorney, but does not know if it was delivered to Dennis, and the quit claim deed was never recorded.

9. Notwithstanding the Judgment and the Settlement Agreement, with Dennis's knowledge and consent, Linda continued to live at the Home. For years thereafter, Linda and Dennis voluntarily did not abide by or enforce the terms of the Settlement Agreement regarding Linda vacating the Home.

10. Around July 2015, Linda and Dennis agreed that Linda would pay Dennis $500,000, in addition to other consideration described below, to purchase the Home, and Dennis would use that $500,000 to pay down the Note he was liable for, which at that time totaled roughly $942,117.52.

11. Dennis and Linda further agreed that Dennis would pay the remainder of the Note above the $500,000 that Linda would pay him.

12. At this time, the Home was worth approximately $1,000,000.

13. Per Dennis's request, Linda would pay Dennis $50,000 immediately so he could begin paying down the Note. Linda would then pay the remaining $450,000 upon closing.

14. In addition to paying Dennis, $500,000 for his interest in the Home, Linda agreed to (1) forgo her right to any past accrued and future spousal support that she was otherwise entitled to under the Judgment and Settlement Agreement, (2) release Dennis from his obligation under the Judgment and Settlement Agreement to maintain a $1,000,000 life insurance policy naming Linda as beneficiary, and (3) forgo her right under the Judgment and Settlement Agreement to 700,000 of Dennis's Northwest Airlines (now Delta) air miles. Together, this

relieved Dennis of at least $800,000 worth of present or future liabilities that he otherwise had to pay to Linda or for her benefit.

15. Linda and Dennis memorialized their agreement in an agreed Order entitled "Stipulated Order for Sale of Former Marital Home" (the "Stipulated Order") on or about July 20, 2015.

16. The Stipulated Order was entered by the Circuit Court for the County of Oakland, Michigan, Family Division, in the aforesaid divorce action on August 10, 2015. A true and correct copy of the Stipulated Order is attached as Exhibit "C" to Plaintiff's amended complaint.

17. While the Stipulated Order does not state what Dennis would use his $500,000 payment for, as alleged above, he had indicated to Linda, and he and Linda had agreed orally and in writing, that he would use that money to pay down the Note.

18. Linda relied on Dennis's representation that he would pay down the Note in entering into the Stipulated Order, as it would make no logical sense for Linda to pay Dennis $500,000 to purchase his interest in a home that served as security for a debt only Dennis was liable for, if Dennis was not going to use that money to pay down the debt secured by the Home.

19. Linda made the initial $50,000 payment to Dennis as called for in the Stipulated Order.

20. Thereafter, in September 2015, Dennis informed Linda that he would not be able to pay down the Note, even with the $500,000 payment from Linda. He apologized to Linda, stated that the Home should be sold to pay down the Note, and admitted that she was entitled to a return of her $50,000 initial payment.

21. After Dennis's admission that he could not honor his promise to pay down the Note, in December 2015, Linda paid the entire amount of the Note with her own funds.

Including interest and other charges in the amount of $945,487.05. Around the same time in December 2015, Dennis transferred his interest in the Home to Linda.

22. Dennis never returned any of the $50,000 that Linda paid him pursuant to the Stipulated Judgment.

23. From July 2015 on, Dennis also stopped paying Linda any spousal support, stopped maintaining the life insurance policy he had purchased for her benefit, and never transferred any of his air miles to Linda.

### First Defense: Failure to Perform by Debtor

24. Linda incorporates her allegations in paragraphs 1-23 above.

25. Dennis breached the Stipulated Judgment when he admitted that he would not use the money Linda agreed to pay him for the promised purpose of paying down the Note.

26. After that admission by Dennis, Linda was excused from further performing under the Stipulated Judgment.

### Second Defense: Lack of Breach by Defendant

27. Linda incorporates her allegations in paragraphs 1-23 above.

28. Linda fulfilled her obligations under the Stipulated Judgment by paying directly to CitiMortgage the $500,000 that Dennis was going to use to pay down the Note.

29. Thus, no material breach occurred, as there is no material difference between Linda paying Dennis $500,000 to pay to CitiMortgage and Linda paying $500,000 to CitiMortgage directly.

### Third Defense: Setoff

30. Linda incorporates her allegations in paragraphs 1-23 above.

31. To the extent Linda still owes Dennis $450,000 under the Stipulated Judgment, that amount must be offset by the $945,487.05 that Linda paid to CitiMortgage in order to satisfy the Note that only Dennis was liable for.

32. Under the circumstances, Dennis would be unjustly enriched if he were able to benefit from Linda paying down the full amount of his Note to CitiMortgage and not crediting her that amount against the $450,000 that Plaintiff claims is owed under the Stipulated Judgment.

### Fourth Defense: Lack of Insider Status

33. Linda incorporates her allegations in paragraphs 1-23 above.

34. Because Linda divorced Dennis in or around 2008, she was not an insider under 11 U.S.C. section 547(b)(4)(b) at the time Dennis transferred the Home to Linda in 2015.

35. Plaintiff therefore would only be able to challenge that transfer as a preference under 11 U.S.C. section 547 if it occurred on or within 90 days prior to Dennis filing for bankruptcy.

36. However, transfer of the Home from Dennis to Linda occurred more than 90 days prior to Dennis filing for bankruptcy.

37. Plaintiff's Counts III and IV are therefore without merit.

### Fifth Defense: Statutory Lien

38. Linda incorporates her allegations in paragraphs 1-23 above.

39. Linda paid the Note shortly after Dennis transferred the Home to her in 2015.

40. Linda's payment of the Note constituted an improvement to the Home under 11 U.S.C. section 550(e).

41. Linda was also a good faith transferee of the Home.

42. She therefore has a statutory lien on the Home, under 11 U.S.C. section 550(e), in the amount of the Note that she paid.

### Sixth Defense: Subsequent New Value

43. Linda incorporates her allegations in paragraphs 1-23 and 39 above.

44. By paying the Note after receiving the Home from Dennis, Linda gave subsequent new value to or for the benefit of Dennis.

45. Dennis never compensated Linda for that new value.

46. That new value was equal to or greater than the value of the Home at the time the transfer to Linda occurred.

47. The new value was not secured by an otherwise unavoidable security interest.

48. The transfer of the Home to Linda is therefore unavoidable as a preferential transfer.

### Seventh Defense: Contemporaneous New Value

49. Linda incorporates her allegations in paragraphs 1-23 above.

50. Linda's payments of the Note occurred in the weeks that followed Dennis's transfer of the Home to Linda.

51. The amount of money Linda paid on the Note is roughly equivalent to the value of the Home at the time it was transferred to Linda.

52. The time between the transfer and the Note payments is close enough so that the transfer constituted a contemporaneous exchange.

53. The transfer of the Home to Linda is therefore unavoidable as a preferential transfer.

**Eighth Defense:  Recoupment**

54. Linda incorporates her allegations in paragraphs 1-23 above.

55. The Stipulated Judgment, the transfer of the Home to Linda and Linda's payment of the Note all stemmed from the same overall transaction.

56. To the extent Linda still owes Dennis $450,000 under the Stipulated Judgment, that amount must be offset by the $945,487.05 that Linda paid to CitiMortgage in order to satisfy the Note that only Dennis was liable for.

57. Linda is therefore entitled to recoup that offsetting amount that she paid on the Note.

**COUNTERCLAIM**

**First Counterclaim:  Unjust Enrichment**

1. Linda incorporates her allegations in paragraph 1-23 of her Affirmative Defenses.

2. Linda's payment of the entire Note with her own funds absolved Dennis, and ultimately his estate, of almost $945,487.05 of debt that Dennis was otherwise liable for.

3. Per Linda's agreement with Dennis that led to the Stipulated Judgment, Linda was only going to pay Dennis $500,000 to go toward the Note, and Dennis would be liable for the remainder.

4. By paying the entire Note, Dennis benefited from Linda above anything he was entitled to in the amount of $495,487.05.

5. Under the circumstances, it would be unequitable to allow Dennis to keep that benefit, and he should instead reimburse Linda for that additional amount that Linda paid.

WHEREFORE, Linda prays for a judgment against the Debtor's estate in the amount of $495,487.05.

### Second Counterclaim: Equitable Subrogation

6. Linda incorporates her allegations in paragraphs 1-23 of her Affirmative Defenses.

7. The Court should equitably subrogate Linda to Dennis's position as it relates to the $450,000 payment allegedly owed Dennis under the Stipulated Judgment, which would effectively credit Linda for the over $450,000 she paid to CitiMortgage for Dennis's benefit.

WHEREFORE, Linda prays for an order equitably subrogating her to Dennis's position as it relates to any sums of money still found to be owing to Dennis by Linda under the Stipulated Judgment.

### Third Counterclaim: Breach of Contract

8. Linda incorporates her allegations in paragraphs 1-23 of her Affirmative Defenses.

9. Dennis breached the parties Stipulated Judgment by indicating that he would not be making the promised payments to CitiMortgage to pay down the Note.

10. Linda therefore was not obligated to provide the consideration that she had promised Dennis in return.

11. This included forgoing her past accrued and future spousal support, 700,000 of his Northwest Airlines air miles and relieving Dennis of the obligation to maintain a $1,000,000 life insurance policy for her benefit.

WHEREFORE, Linda requests a judgment against the Debtor in an amount to be determined at trial, equal to the value of missed unpaid accrued and future spousal support payments from July 2015 to the date of judgment. Linda further requests an injunction requiring the reinstatement of spousal supports per the parties' earlier agreements, and requiring Dennis to

purchase a $1,000,000 life insurance policy and name Linda as the beneficiary. In the alternative to an injunction requiring the purchase of life insurance, Linda requests a monetary judgment equal to the present value of the cancelled life insurance policy that Dennis obtained for her benefit. Linda also requests the monetary value of 700,000 of Dennis's Northwest (now Delta) Airlines air miles as of the date the Stipulated Judgment was entered, which is currently estimated to be $12,000.

                Respectfully submitted,

Dated: September 25, 2018

By: /s/ Brian J. Wilson
N. Neville Reid
Brian J. Wilson
Fox, Swibel, Levin & Carroll, LLP
200 W. Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
Attorneys for Defendant, Linda Kovalsky